## SPELLMAN *et al. v.* CITY OF NEW ORLEANS.

## ILLINOIS CENT. R. CO. *v.* SAME.

*(Circuit Court, E. D. Louisiana. February 5, 1891.)*

CONSTITUTIONAL LAW—INTERSTATE COMMERCE.

A city ordinance, prohibiting any railroad company from allowing the sale of fruit, vegetables, or perishable freight arriving in the city over its lines from cars on the tracks, from any platform, shed, or building at the depot on the grounds of the company, is, where the merchandise affected largely comes from other states, an interference with interstate commerce, and, if not based on considerations of public health, or intended to prevent the crowding and obstruction of streets and public places, but solely to hinder competition between non-resident shippers and resident licensed dealers in the same line, it is unconstitutional and void.

In Equity. Bill for injunction.
*W. W. Howe,* for complainant Spellman.
*Girault Farrar,* for complainant railroad.
*F. B. Lee,* for city of New Orleans.
Before PARDEE and BILLINGS, JJ.

PER CURIAM. The submission is upon applications for injunctions *pendente lite.* These suits are brought—the one by the receiver of a railroad company, and the other by the railroad company itself—to enjoin the city from enforcing, at the depots and grounds of the complainants, the following ordinance:

"No. 4891, COUNCIL SERIES.

"An ordinance amending ordinance 4090, C. S., to prohibit the peddling of fruit, vegetables, produce, or merchandise from cars, platforms, sheds, warehouses, grounds, or other property owned or controlled by any railroad company or companies in the city of New Orleans.

"Section 1. Be it ordained by the council of the city of New Orleans that ordinance No. 4090, C. S., adopted November 5th, 1889, be amended and reenacted so as to read: 'That it shall be unlawful for any railroad company or companies in the city of New Orleans to allow the sale of fruit, vegetables, market produce, perishable freight or merchandise, except pears, peaches, berries, and melons, arriving over their line in the city of New Orleans, from cars on the tracks, from any platform, shed, or building at the depot or depots, on the grounds or other property owned or controlled by such railroad company or companies in the city of New Orleans.'"

"Sec. 4. Be it further ordained that the provisions of this ordinance shall apply likewise to the levee and steam-boat landings of this city, except in the case of fruits just arriving from tropical countries, on vessels plying to this

port. In 'that case the fruit may be sold at the ship's side, but within forty-eight hours after the arrival of the steamer conveying the same."

The bills aver that the commerce interfered with is interstate, and that the common council have no authority from the charter to pass it, and that it is unreasonable, unequal, and unjust.

We do not think it necessary to consider the question of authority under the charter. *First*, is it an interference with interstate commerce? and, *secondly*, is it such a regulation as is reasonable? *i. e.*, is it requisite for any municipal purpose? The showing is that the vegetables and merchandise affected largely come in from other states. We think usage and public convenience require that common carriers should receive goods for carriage consigned to order, and should deliver the goods so shipped according to the orders of the shipper; that such a delivery is ordinarily undertaken by the carrier, and may be demanded by the shipper; and that to take it out of the things permitted in the transportation of goods from point to point would deprive commerce of an incident and auxiliary so necessary as to be a part of it. The right to bring in implies the right to sell. Chief Justice MARSHALL, in *Brown* v. *Maryland*, 12 Wheat. 446, 447, where the question was one as to the relation of foreign commerce, says:

"Commerce is intercourse. One of its most ordinary ingredients is traffic. It is inconceivable that the power to authorize this traffic, when given in the most comprehensive terms, with the intent that its efficacy should be complete, should cease at the point when its continuance is indispensable to its value. To what purpose should the power to allow importation be given, unaccompanied with the power to authorize a sale of the thing imported? Sale is the object of importation, and is an essential ingredient of that intercourse, of which importation constitutes a part. It is as essential an ingredient, as indispensable to the existence of the entire thing, then, as importation itself. It must be considered as a component part of the power to regulate commerce."

Chief Justice FULLER, in *Leisy* v. *Hardin*, where the attempted limitation was upon interstate commerce, (135 U. S., at page 123, 10 Sup. Ct. Rep. 689,) says:

"But whenever the law of the state amounts essentially to a regulation of commerce with foreign nations or among the states, as it does when it inhibits, directly or indirectly, the receipt of an imported commodity, or its disposition before it has ceased to become an article of trade between one state and another, or another country and this, it comes in conflict with a power which, in this particular, has been exclusively vested in the general government, and is therefore void."

The ordinance is, then, a regulation of commerce.

This brings us to the question, is it one of those rules which the municipal government may, nevertheless, make? An analysis of the ordinance shows that it has nothing to do with the public health, for it controls sales made even before the arrival of the article sold; it has nothing to do with the prevention of crowds upon the streets, where the cars of delivery might be located, for it operates upon the most quiet sale, in places deserted as well as crowded, with possibly only buyer and seller present; nor with the obstruction of the streets by leaving cars

standing on the tracks and crossings for delivery purposes, for no such obstruction is hindered by the ordinance. The title is against peddling, but not one word is there in the ordinance against itinerant sellers, or vending from place to place. In short, the ordinance is not in aid of the prevention of any public harm or the promotion of any public good, but, on the contrary, is alike to the restriction of the rights of the importer, as usually recognized, and the inconvenience of the citizens; and, as was practically admitted on the hearing, seems to have no other purpose than to hinder competition between non-resident shippers and dealers in certain perishable articles and the resident licensed dealers in the same line. Our conclusion, therefore, is that the ordinance is a regulation of commerce; and, not being in aid of any of the objects properly intrusted to the municipal government, falls within the class of unreasonable ordinances. See Horr & B. Mun. Ord. §§ 131, 132, and cases there cited.

The injunction *pendente lite* is granted.